UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CASE NO. 09-13383

DONALD H. GRODSKY SECTION "B"

    DEBTOR CHAPTER 7
**************************************************************************

JOHN T. LAMARTINA HOWELL AND
ELISE LAMARTINA

VERSUS ADV.P. NO. 18-1006

DAVID ADLER, CHAPTER 7 TRUSTEE, *et al.*

## WRITTEN REASONS FOR ORDER

This matter comes before the court on remand from the district court (P-73). The district court on November 6, 2018 entered an order remanding the appeal taken in this case to the bankruptcy court so that the court may enter more detailed reasons for its order of June 13, 2018 dismissing the plaintiffs' complaint and permanently enjoining them from further litigating certain claims related to the proceedings that have already taken place in this court. The district court further dismissed the plaintiffs' appeal without prejudice.

I.    **The procedural history of the case**

This adversary proceeding is part of a long history of litigation between the Chapter 7 Trustee in this case, his attorneys, and Elise LaMartina ("LaMartina") and her son John LaMartina Howell ("LaMartina Howell"). The court will set forth the procedural history of the case to aid the district court. Donald Grodsky filed a petition for relief under Chapter 7 of the Bankruptcy Code on October 6, 2009. The case proceeded in an ordinary fashion, and on December 2, 2009 the Chapter 7 Trustee filed a Petition of Disclaimer and Abandonment (P-39)

1

and a report of no distribution, stating that there were no assets to administer. The debtor's discharge was entered on January 14, 2010, and the case was closed on April 23, 2010.

On September 4, 2013, the Chapter 7 Trustee filed a motion to reopen the case (P-56); the court granted the motion on September 5, 2013. The Trustee's basis for reopening the case was to investigate a mortgage note that the Trustee believed was owned by the debtor but had not been scheduled as an asset in the debtor's bankruptcy schedules. On October 30, 2013 the Trustee filed a Notice of Assets and a Request for Notice to Creditors (P-69), and a notice of need to file proofs of claim due to recovery of assets was sent to all creditors of the bankruptcy estate (P-71). One of the plaintiffs in this case, John LaMartina Howell filed proof of claim number 6 on January 30, 2014. The Trustee filed a motion to approve compromise on March 26, 2014 and noticed it for hearing. LaMartina Howell filed an objection to the motion, and after a hearing was held, the court entered an order approving the compromise (P-77). LaMartina Howell timely appealed this order, and on October 8, 2014 the district court affirmed this court's order approving the compromise.

The compromise was between the Trustee and Lake Villas No. II Homeowners Association, Inc. ("Lake Villas"). It provided that Lake Villas would not contest the validity of a mortgage note the Trustee sought to enforce on behalf of Grodsky, and in return, the Trustee would recognize that Lake Villas also had claims against the same property, a condominium. The agreement provided that when the foreclosure of the condominium was complete, the Trustee and Lake Villas would split the proceeds of the sale evenly.

Lake Villas and Elise LaMartina had been involved in years of litigation in Louisiana State court over LaMartina's failure to pay condominium dues and assessments. At the time of the filing of the aforementioned motion to compromise, Lake Villas had several judgments

against LaMartina, and had filed several liens against the condominium. When Lake Villas attempted to foreclose on the condominium, it found a recorded first mortgage encumbering the condominium; the holder of that mortgage was listed as Jane LaMartina, Elise LaMartina's mother. Apparently, when Lake Villas filed a Motion to Cancel Mortgage, or Fix Value Thereof, and for Writ of Fieri Facias, Jane LaMartina filed an opposition stating that the Mortgage Note was not supposed to be in her name, but rather the name of the debtor in this case, Donald Grodsky.[1] Thereafter the parties in the state court litigation discovered several transfers of the note that had been previously undisclosed. The various purported transfers of the note were as follows: Grodsky (through a wholly owned LLC) to Timothy Howell, Elise LaMartina's ex-husband and a joint owner of the condominium. Then, when Lake Villas pointed out if Howell as a joint owner in fact owned the note, then the mortgage would be extinguished, another previously undisclosed document surfaced wherein Grodsky (again through the LLC) transferred the note to Pooter T, LLC, whose sole member was John LaMatina Howell, son of Elise LaMartina, who was 18 years old at this point. The state court held an evidentiary hearing, and at the end of that hearing, a judgment was rendered by the state court judge that held the owner of the note was Grodsky.

      The objection to the motion to compromise filed by John LaMartina Howell argued that because he had filed a motion for new trial in state court, and after that was denied, had taken a suspensive appeal, that the bankruptcy court should not approved the compromise because no final judgment holding that Grodsky was the owner of the note had been entered. LaMartina Howell also referenced a new suit that had been filed in state court by LaMartina Howell on

---

[1] These facts are taken from the motion to approve compromise (P-73).

behalf of Pooter T, LLC, and against Grodsky, seeking a ruling that Pooter T, LLC was the owner of the note.

The court approved the compromise, and LaMartina Howell and Pooter T, LLC filed an appeal. While the appeal was pending, the Trustee filed a motion for a Rule 2004 examination of LaMartina Howell (P-85), which the court granted. A little over a week before the 2004 examination was to take place, LaMartina Howell's attorney filed a motion to withdraw from the case, citing an unreasonable financial burden in continuing to represent LaMaritna Howell, and a fundamental disagreement as to the handling of legal actions. A few weeks later the Trustee filed a motion for contempt against LaMartina Howell (P-93), alleging that he had not produced any documents, nor had he appeared at the 2004 examination as ordered. Both matters were set for hearing, and the court granted the motion to withdraw, and continued the motion for contempt to allow LaMartina Howell time to file an opposition to the motion for 2004 examination.

At the next hearing, held September 4, 2014. The court granted the motion for 2004 examination, the parties agreed to September 10, 2014 as the date for the examination, and the motion for contempt was continued without date, to be reset only if necessary (P-110). On September 10, 2014, a motion was filed to continue the 2004 exam to September 19, 2014; at that time the motion was granted, and the Rule 2004 exam was held.

On October 8, 2014, the district court entered an order affirming this court on LaMartina Howell's appeal taken on this court's approval of the motion to compromise between the Trustee and Lake Villas. No further appeal was taken with respect to the motion to compromise.

Meanwhile, in the state court proceeding, the suspensive appeal that LaMartina Howell had taken was converted to a devolutive appeal, and LaMartina Howell sought writs from the

Louisiana First Circuit Court of Appeal on whether that was proper. On February 23, 2015 the writs were denied, making the state court appeal a devolutive appeal. The First Circuit Court of Appeals then dismissed the appeal of the order decreeing Grodsky the owner of the mortgage note on December 23, 2015. *Lake Villas No. II Homeowners' Association, Inc. v. Elise LaMartina,* 2015 WL 9435193 (La.App. 1 Cir.). Several other subsequent writs to the First Circuit and the Louisiana Supreme Court were denied. *Lake Villas No. II Homeowners' Ass'n, Inc. v. LaMartina*, 2014-1397 (La. App. 1 Cir. 2/23/15), *writ denied*, 2015-0580 (La. 5/22/15), 171 So. 3d 250; *Lake Villas No. II Homeowners' Ass'n, Inc. v. LaMartina*, 2015-0244 (La. App. 1 Cir. 12/23/15), *writ denied*, 2015-0580 (La. 5/22/15), 171 So. 3d 250, *writ denied*, 2016-0149 (La.3/14/16), 189 So. 3d 1070.

Back in the bankruptcy court, the Trustee filed a motion for turnover of estate property on March 11, 2015. The motion stated that since LaMartina Howell was in possession of the mortgage note that the state court had determined belonged to Grodsky, it was property of the estate, and LaMartina Howell was required to turn it over to the Trustee. LaMartina Howell filed an opposition arguing that the judgment holding that Grodsky was the owner of the note was not yet final; after seeking a continuance, which was granted, a hearing on the motion for turnover was held on April 23, 2015. The court granted the motion for turnover (P-124).

LaMartina Howell timely filed a motion to reconsider the order granting the motion for turnover on May 7, 2015 and set the motion for hearing on September 10, 2015. For some reason, which no one remembers now, the court had to reschedule the hearing on the motion to reconsider to November 19, 2015. The court's records show that this hearing was in turn continued to December 1, 2015, at which point the motion to reconsider was denied (P-136). No appeal was taken from this decision. The Trustee then filed an application to employ special

counsel to assist with the foreclosure proceedings in state court, which the court granted on March 23, 2016. On November 15, 2017 the Trustee filed a motion for an administrative claim stating that when foreclosure proceedings began, the parties discovered that the condominium had been sold at a tax sale. Lake Villas then put up the $5,654.35 to redeem the condominium from the tax sale; the Trustee asked that this amount be given a super priority in the bankruptcy case. The court granted the motion on December 12, 2017 (P-151).

On January 29, 2018, the plaintiffs filed this adversary proceeding. Their complaint alleged that the Chapter 7 Trustee and his attorneys had unlawfully conspired to convert "for his own personal gain and unjust enrichment," the mortgage note. The complaint recited all of the arguments that the plaintiffs had made both in state court and in this court about the ownership of the note. The complaint also alleged that there was a conspiracy between the debtor and the defendants to deprive the plaintiffs of the note, and that the state court judge was biased against them. It also contained allegations that the defendants had threatened the plaintiffs and attempted to bribe witnesses. The plaintiffs list the following causes of action in their complaint: witness tampering, offering bribes, accepting bribes, retaliating against witnesses and victims, fraud and swindles, wire fraud, extortion under color of official right, laundering of monetary instruments, engaging in monetary transactions in property derived from specified unlawful activity, attempt and conspiracy, perjury generally, false declarations in federal court, contempt, fraud, defamation, intentional interference with movables, theft and/or destruction of property, intentional interference with contract, wrongful conversion, unjust enrichment, breach of fiduciary duty, intentional and/or negligent infliction of emotional distress, tortious interference with business relationships, tortious interference with contract, breach of duty, abuse of process,

contempt, and perjury. The prayer of the complaint seeks to have the note awarded to LaMartina Howell, plus damages.

After the complaint was served, two sets of defendants filed motions to dismiss (P-37) and (P-40). A hearing was held on April 18, 2018, and the court entered a judgment and permanent injunction prohibiting the plaintiffs from filing any further litigation concerning the ownership of the note (P-63). As stated above, the plaintiffs appealed the order dismissing the case, and the district court remanded the case back to this court for written reasons for this court's order dismissing the case.

**II.     The reasons for the court's order dismissing the case.**

The plaintiffs' complaint is not particularly well organized; rather, they used a scattershot approach to making various allegations against the defendants. The court will group the various categories of grievances for clarity.

**A. The allegations that attempt to re-litigate the state court judgment on the ownership of the note.**

The first 11 paragraphs in the complaint deal with who the defendants are, and the court need not address those; they do not require a response from the court. Paragraph 12 states that this court has jurisdiction. Paragraphs 13-30 all relate to events that happened before the bankruptcy case was reopened, so they are not relevant to the bankruptcy proceedings. Those paragraphs deal mainly with the plaintiffs' complaints about the state court. Additionally, paragraphs 31, 33, 43, 44, 46, 48, 50, 51, 55, 57, 58, 59, 61-64, 66, 69, 72-78, and 82-88 re-hash arguments about the state court proceedings, and how the plaintiffs feel that they were unfair.

The ownership of the note was litigated in the state court proceedings. Several appeals were taken. The plaintiffs tried their best to advance their theory that the state court judge was biased against them, and the Louisiana First Circuit and the Louisiana Supreme Court did not buy their

argument. Frankly, neither does this court. But what matters is that a final judgment was entered in a Louisiana state court awarding ownership of the note to the debtor, Donald Grodsky. Lower federal courts lack subject matter jurisdiction over claims that seek to modify or review a state court judgment. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Thus, no matter how much the plaintiffs wish it were so, this court cannot change the state court's ruling that Grodsky is the owner of the note. These portions of the complaint are dismissed for that reason.

**B. Allegations against the Trustee and his attorneys while they were acting in the scope of their official duties.**

The second group of allegations relate to the conduct of the Chapter 7 Trustee and his attorneys after the bankruptcy case had been reopened and they were acting in the scope of their official duties. These are covered in paragraphs 31, 32, 34-42, 45, 47, 49, 52-54, 56, 60, 65, 67-71, 79-81, and 89-91. They generally allege that the Trustee and/or his attorneys threatened and attempted to bribe witnesses, lied to the state court and this court, and engaged in "tactics rivaled only by that of La Cosa Nostra." The plaintiffs use a lot of inflammatory language in describing the conduct of the Trustee and his attorneys, but a close examination of the transcripts and other documents the plaintiffs submitted along with their complaint reveals only that the Trustee and his attorneys conducted an investigation into the plaintiffs' affairs with respect to the ownership of the note and then once the note was determined to belong to the debtor, pursued recovery of the note on behalf of the bankruptcy estate. The court finds that the Trustee and his attorneys acted within the scope of their duties during the events described in the complaint, and that the plaintiffs' allegations are not based in fact. The court dismisses those portions of the complaint. As for the order directing LaMartina Howell to turn the note over to the bankruptcy trustee, that

order became a final order when the motion to reconsider was denied and no appeal was taken. The court will not revisit that decision.

Additionally, there are some allegations that various parties committed perjury or other perceived offenses in the course of the state court proceedings. The state court's order leaves no doubt that the court considered the veracity of the witnesses in making its decision. This court is not the proper place to adjudicate those complaints, so those portions of the complaint are dismissed for lack of jurisdiction.

Paragraph 64 complains that the Office of the U.S. Trustee failed to respond to complaints the plaintiffs filed about the Chapter 7 Trustee and his attorneys. The Office of the U.S. Trustee in this district has a history of being very responsive to legitimate complaints. The court has no doubt that the U.S. Trustee received these claims and investigated whether they had merit. It is highly likely that the U.S. Trustee came to the same conclusion as this court; that the plaintiffs are disgruntled because they do not want to pay the judgments against them, and they wish to delay the foreclosure on the condominium.

C. **Additional comments**

The court adds that the plaintiffs, one of whom is a disbarred attorney, have used legal proceedings to live in the condominium without paying the condo association dues and fees since 2002; they have also avoided foreclosure proceedings for several years. Given the history of the litigation in these proceedings, the court finds it highly unlikely that the Chapter 7 Trustee and his attorneys, as well as the other defendants have conspired to defraud the plaintiffs in the manner alleged in the complaint. What the court does find likely is that the plaintiffs spent several years filing suits and "discovering" new documents to prevent Lake Villas from foreclosing on the condominium, and then were caught by the state court judge. Once the

judgment awarding the note to Grodsky was entered, the plaintiffs have expended a lot of effort and caused the Trustee and Lake Villas to expend an enormous amount of resources so that they could delay the foreclosure proceedings for as long as possible. This court is convinced that this needs to end. As the Trustee correctly points out, the *Barton* Doctrine requires the permission of the bankruptcy court before suit may be brought against a bankruptcy trustee. *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881); *Villegas v. Schmidt,* 788 F.3d 156 (5th Cir. 2015). Because the court finds that the claims against the Chapter 7 Trustee and his attorneys do not have merit, this court does not give leave to the plaintiffs to initiate new proceedings against the Chapter 7 Trustee, his attorneys, or the Office of the U.S. Trustee in either federal or state court for any matters related to the ownership of the note, the litigation surrounding the ownership of the note, or the actions of the Trustee or his attorneys during the course of these bankruptcy proceedings. This is the basis for this court's injunction against the plaintiffs contained in the court's order dismissing the case.

The plaintiffs also make allegations that the Chapter 7 Trustee is wasting the assets of the estate on attorneys' fees to the detriment of the LaMartina Howell, who claims to be a secured creditor of the bankruptcy estate. This is not correct. The note is secured by the condominium. If the condominium can ever be foreclosed upon and sold, the bankruptcy estate will realize only the value of the note. These funds would normally be used to pay the unsecured creditors of the estate. LaMartina Howell is not a secured creditor of the estate, as he asserts. If the state court had awarded ownership of the note to him, then LaMartina Howell would have been a secured creditor of his parents. His security would be the condominium. But Grodsky is the owner of the note, not LaMartina Howell. The proof of claim filed by LaMartina Howell is based on the note. Because the state court has already ruled that he is not the owner of the note, his proof of

claim is based on a note that he does not own. Although no objection to claim has yet been filed, it seems likely to the court that in the event any funds are ever recovered for the bankruptcy estate, the Chapter 7 Trustee will file an objection to the proof of claim, at which point the court will take this matter up yet again.

The plaintiffs' arguments that they are not seeking to delay administration of the estate are disingenuous at best. The defendants do not seek to preserve property of the estate, rather they seek to prevent the Trustee from liquidating the property so that he can distribute it to creditors. Contrary to the plaintiffs' claims, five other creditors have filed proofs of claim in this case and have been waiting for years to be paid. The plaintiffs are correct, however, that at this point it is unlikely that any creditors will be paid. The administrative fees and costs of these proceedings are now almost certainly well above what the estate will recover from the note.

Finally, the plaintiffs stated at oral argument that they were not trying to re-litigate the ownership of the note or the order directing LaMartina Howell to turn the note over to the Trustee. Rather, they stated that they were suing the Trustee, his attorneys and the various other parties for the behavior they engaged in during the litigation. The main prayer of this complaint asks that the court award the note to LaMartina Howell, which speaks for itself as to the motivation behind the plaintiffs' actions.

The foregoing constitutes the court's reasons for its dismissal of the plaintiffs' complaint.

New Orleans, Louisiana, April 11, 2019.

_____
Jerry A. Brown
U.S. Bankruptcy Judge